Lee, J.
By the thirteenth section of the act of 1819, concerning wills, 1 Rev. Code, ch. 104, p. 378, it is provided that when a will shall have been admitted to probat in the proper court, any person interested may within seven years afterwards appear and by bill in chancery contest its- validity ; and when such bill shall be filed, an issue shall be made up to be tried by a jury, whether the paper in question be the will of the testator or not. But if 'no such party appear within that time, the probat is declared to be “ forever bindingwith a saving in favor of infants, femes covert, and persons absent from the state or non compos mentis, of the like period after the removal of their respective disabilities. In this case it sufficiently appears that the complainants were within the saving in favor of persons absent from the state, they being citizens and residents of the state of New York, and no evidence having been offered to show that either of them had ever been in the state of Virginia until a short time previous to the institution of the suit. But it is contended on the part of the appellant, that by an equitable construction of the act of March 8th, 1826, Sup. Rev. Code, p. 260, the saving in the statute of wills above referred to, so far as it applies to persons absent from the state, must be regarded as repealed, and that such persons, after the passage of that act, could only file a bill to contest the validity of a will which had been admitted to probat within the seven years. I cannot concur in this view of the operation of the act of 1826. It is not difficult to imagine reasons why the legislature, in striking out of the act of *366 February 25th, 1819, concerning the limitation of actions and entries into lands, the saving in favor of persons out of the country, may not at all have intended to interfere with the provision in the statute of wills giving to such persons a further period after the expiration of that limited for persons residing in the state, within which to appear and contest a will which might have been admitted to probat by an ex yarte proceeding, to which they were entirely strangers, and of which they might not have been apprised until they chanced to come into the state. But however this maybe, the repealing clause in the act of 1826 is confined in terms to the saving in the act of February 25th, 1819, quoting that act by its title, and declares that the entries and actions embraced by the provisions of that act shall thereafter be made and brought within the same time as if the parties entitled thereto had been within the commonwealth when their right or title accrued; and it would be against every sound rule of construction to extend its operation by implication or otherwise to a provision in a totally different act upon an entirely different subject, and which created a peculiar statutory proceeding for a particular purpose not embraced by the act containing the saving clause intended to be repealed. I think, therefore, the saving in the statute of wills, in favor of persons out of the state, is unaffected by the act of 1826, and that the complainants were not barred from contesting the will of 1818 by the time which had elapsed after it had been admitted to probat before their bill was filed.
The next objection on the part of the appellant to which I will advert is, that the contingent limitation over upon the death of Maria Matilda Schultz in the paper of 1828 under which the appellants claim, is void because too remote ; and that by the operation'of the act concerning estates tail and executory limita *367 tions, the whole estate of Christian Schultz would, under the provisions of said paper, be vested in fee in the said Maria, and upon her death childless and unmarried, would descend to the appellant as her heir at law; and so that the appellees had no such interest in the estate of Christian Schultz as would entitle them to maintain a bill calling in question the will of 1818. The words of the act are, that “ any person interested” may appear and contest the validity of a will that has been admitted to probat, by bill in chancery; and a bill filed for such a purpose should show how the complainant has an interest in the subject entitling him to call the validity of the will in question. I think, however, if the right of the appellees to maintain their bill depended upon the validity of the contingent limitation over upon the death of Maria Matilda Schultz contained in the will of 1828, it could not be successfully assailed. Because, if it could be questioned whether such a limitation would be good at common law, there can be no doubt, I apprehend, that it is exactly embraced by the twenty-sixth section of the statute concerning conveyances, 1 Rev. Code 1819, ch. 99, p; 369; which declares that every contingent limitation in a deed thereafter made, or in the will of any person who should thereafter die, made to depend on the dying of any person without heirs, or heirs of the body, or issue, or issue of the body, or without children or offspring, or descendant or other relative, shall be held and interpreted a limitation to take effect when such person shall die not having such heir, or issue, or child, or offspring, or descendant, or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise expressly and plainly declared on the face of the deed or will creating if. With this statutory interpretation of the limitation in this will, it cannot *368 be regarded as a contingent limitation made to depend on an indefinite failure of issue or children, but as confined to the time of the death of the devisee or the period of ten months thereafter; and is clearly good. The appellees, therefore, would take a certain contingent interest under the will of 1828, which the law fully recognizes, and which would be amply sufficient to bring them within the terms of the statute.
The difficult and important question in this case, however,, is as to the effect of the sentence of the County court of Wood of the 21st of October 1845, rejecting the will of 1828, when first propounded by Michael Schultz; which sentence has ever since remained in its full force and unreversed. It is insisted on behalf of the appellant that that sentence is conclusive upon all the world, and is a complete bar both to the proceeding in chancery to set aside the will of 1818 by setting up that of 1828, and also to the proceeding in the County court of Wood to admit the latter to probat after the decree of the court in the chancery case setting aside the will of 1818; while the appellees contend that it is a bar to neither proceeding, and is in effect under the circumstances attending its rendition, to be regarded as a nullity.
It is unnecessary now to enter into a discussion as to the effect of a sentence of rejection by a court of probat fairly obtained and pronounced on the merits, of a paper propounded as a will by the nominated executor, upon the rights of a legatee named in the paper. For it has been expressly adjudicated by this court that such sentence of rejection, is conclusively binding upon the legatee notwithstanding he was an infant at the time it was pronounced and was no party to the proceeding: And that the paper thus rejected cannot be again propounded for probat by the legatee. Wills v. Spraggins, 3 Gratt. 555. And it can make no difference that the will in this case was propounded by *369 Michael Schultz one of the devisees in remainder, and not by the executrixes named in the will or either of them. The ecclesiastical courts of England have jurisdiction only so far as testaments disposing of personal estate are concerned; and it therefore devolves upon the executor named in the will, who is the legal owner of the personal estate, and the proper representative of all the interests arising under the will, to propound it for probat, and obtain the sanction of the proper tribunal for its validity. But with the real estate he has nothing to do; nor is there any provision made by the English law for probat of a will of realty. With us it is different: Our statute provides for pro-bat, in the same courts, of wills disposing of real estate .as well as of personal estate : Both kinds are to be proven and recorded in the appointed court. But as the executor here has no more concern with the real estate disposed of by the will than in England, he cannot be regarded as the peculiar or only propounder of the instrument; and it is made the duty of the court to receive a will by whomsoever propounded, whether the executor, a legatee or devisee therein named, to hear the evidence and to admit the will to probat or to reject it as the proof shall require. But the propounder of a will, whoever he may be, whether executor, legatee or devisee, necessarily becomes the representative of the will for the purpose of its probat and of all similarly interested, though they are not made formal parties to the proceeding, and may have had no notice of its pendency; and this too whether they are sui juris, or laboring under infancy, coverture or other disability. It is the policy of our law to provide promptly a representative of the estate of a decedent, and to avoid all unnecessary delays in the disposition of the estate. But when a will has been propounded by a party interested, and fairly rejected on the merits, it would defeat the policy of the law, *370 and be productive of many mischiefs, if it could be again propounded by the same party or by others who might be interested, and the contest thus renewed from time to time. The sentence therefore against the will must be regarded as a sentence against all claiming under it. It stands upon a footing analogous to the cases known as judgments in rent, which being adjudications upon the subject matter, are regarded as final and conclusive not only in the courts in which they are pronounced, but in all others in which the same question arises. 1 Stark. Ev. 227 et seq.; Gelston v. Hoyt, 3 Wheat. R. 246; Brown v. Gibson, 1 Nott & McCord, 326.
It is true there is a marked distinction between a sentence for and a sentence against a will where it is propounded ex parte for probat in the first instance. In the former case the sentence is binding and effectual for all legal purposes while it remains in force, but it is liable to be set aside by a proceeding in chancery provided by our statute;. and in it nothing is concluded by the sentence of the probat court. This distinction, however, is nowise material to the case in judgment.
It follows that the sentence of 1845 against the will of 1828 in this case, must be regarded as binding and conclusive not only upon Michael Schultz but also upon all the other appellees elaiming under it, unless the circumstances under which it was pronounced are such as to deprive it of all legal effect and render it inoperative.
It is contended on the part of the appellees, that the sentence was not upon the merits; jthat the County court rejected the paper not because it was not sufficiently proven to be the last will and testament of Christian Schultz, but because it considered that the sentence of 1830 admitting the will of 181S to probat, was conclusive till reversed or in some way annulled, and that it had at that time no jurisdiction to enter *371 tain the subject of the- probat of the paper of 1828. It appears from the bill of exceptions taken by the appellant upon the propounding of the will of 1828 the September term 1845, that when the propounder Michael Schultz moved the court to hear the evidence . . ot the subscribing witnesses and to admit the paper to probat, the appellant appeared and objected to the probat of the same, exhibiting the record of the probat of the will of 1818. Her objection was that the sentence in favor of that will was conclusive against the probat of the paper of 1828 -r that the court then had no power or authority to admit the latter to probat, and that it therefore should not proceed to hear the evidence touching its execution. But the court was of opinion and so expressly declared, that the probat of the paper of the 22d of May 1818 did not preclude them from hearing the evidence of the due execution and validity of the paper of the 6th of June 1828, then propounded, nor from admitting the same to pro-bat, provided the evidence would authorize them so to do; and it accordingly overruled the objection of the appellant, and decided that it would hear the evidence-of the subscribing witnesses to the paper and. any-further legal evidence offered by either party. It-being too late, however, to hear the testimony at that-term of the court, the application was continued over till the then next term. At that term, the court proceeded to hear the evidence. Two of the subscribing witnesses who proved the execution of the paper of 1828 and of the codicil annexed, by Christian Schultz,, were introduced and examined, and the signature of the third subscribing witness who was dead, was proved to be in his handwriting. And the whole evidence and the argument of counsel on both sides having been fully heard, the, decision of the court was pronounced rejecting the said paper and codicil annexed, and refusing to admit the same to- probat as the. *372 last will and testament of the said Christian Schultz. The precise ground on which the decision rested is not given. It may be that the court was not satisfied with the proof as to the due execution and attestation of the paper, or as to the competency of the testator. Although the two witnesses who were examined thought him of sound and disposing mind and memory at the time of the execution of the instrument, the court may have regarded it as “ sounding in folly,” from the internal evidence which the paper itself afforded. The justices composing it may have deemed the views and opinions contained in the “ codicil” so erratic, unsound and unreasonable, that no sane man and competent to make a valid will, could ever have given utterance to them. Or the court may have undertaken to compare the will of 1818 and that of 1828 together, to pass on their construction and to decide the two were wholly incompatible and could not stand and consist together in whole or in part. What may have been the particular view of the court may not be clearly ascertained; but certainly it cannot be inferred from the record that the decision rested on the ground of want of jurisdiction, or that the court was con-, eluded by the sentence admitting to probat the will of 1818, when nothing to that effect is stated, and when, to the contrary, it is expressly stated that the court upon the very question raised, decided that they would hear the evidence in support of the will of 1828 as well as that against it, and that it was not precluded by the probat of the will of 1818 from so doing, nor from admitting the paper of 1828 to probat if the evidence would authorize it.
But it is contended on the part of the appellees, that whatever may have been the opinion of the County court upon this question, in point of fact it had no jurisdiction of the subject of the probat of the will of 1828 when it was propounded in 1845 : That *373 by its sentence in 1830 admitting to probat the will of 1818, its jurisdiction was exhausted and it had become functus officio, and that it was concluded by the sentence in favor of the will of 1818 from' passing upon the probat of the paper of 1828; and that thus the sentence of 1845 against the will of 1828 was a nullity and concluded nobody. If this be correct, there is an end of the question and of the case. I proceed then to examine this proposition.
I think it certainly cannot be maintained that in all cases where the probat court has admitted to probat a paper purporting to be a last will and testament, it has thereby fully exercised its entire jurisdiction over the subject of the testamentary disposition of the decedent’s estate. To affirm this proposition would be in certain cases, (so far as the probat court is concerned,) to compel a man to die intestate as to part of his estate, though it might have been his deliberate and expressed intention to dispose of the whole. A man’s last will must not of necessity be confined to one testamentary paper. It may consist of several different testamentary papers, of different dates, and executed and attested at different times. It cannot be indispensable either that they should be propounded in the court of probat at the same time. If a will has been! produced and admitted to probat in the proper court, and subsequently another testamentary paper be found purporting to be a codicil to the former, it cannot be doubted that the probat court could also receive and admit it to probat at a subsequent period. Case of Reed’s will, 2 B. Monr. R. 80. Nor can it be material that a testamentaiy paper found after a will had been admitted to probat, should purport to be a codicil to the latter, or that it should necessarily refer to it in express terms. If its provisions are but supplemental to those of the will admitted to probat, or if they do not necessarily con *374 flict with them, or if, though to some extent the two are conflicting, yet if there are provisions in the will of prior date not in conflict nor inconsistent with those of the other, both ‘are, I apprehend, to be regarded as parts and parcels of the last will of the testator, constituting but one whole, and that of later date (assuming that it contains no clause of express revocation of former wills,) only serving to revoke the former so far as the provisions of the two are conflicting and incompatible. And where the papers are of different dates and their provisions are conflicting, the courts will, if possible, adopt such a construction as will give effect to both, sacrificing the earlier so far only as it is clearly irreconcilable with the latter paper; supposing of course that such latter paper contains no express clause of revocation. 1 Jarm. on Wills 159; Coward v. Marshal, Cro. Eliz. 721; Thomas v. Evans, 2 East’s R. 488; Phipps v. Earl of Anglesey, 7 Bro. P. C. 443; Goodright ex dem. Rolfe v. Harwood, 7 Bro. P. C. 489; S. C. in K. B., 1 Cowp. 87, 2 Wm. Black. 937; Hitchins v. Bassett, 3 Mod. R. 203; S. C. 1 Show. R. 537; Roberts on Wills 265; Brant ex dem. Wilson v. Wilson, 8 Cow. R. 56; 4 Kent’s Comm. 528; Weld v. Acton, 2 Eq. Cas. Ab. 777.
If several testamentary papers of the same decedent executed at different dates, should be presented to the court of probat at the same time, and the one of the date most proximate to the death of the testator contain an express clause of revocation of former wills, the court, if it admit it to probat, may properly reject those of prior date thereby revoked. So if, after a will of later date containing an express clause of revocation shall have been admitted to probat, a will of prior date be propounded, it may properly be rejected by the court of probat. But a will of later date may well revoke all former wills, though it contain no express clause of revocation ; and whether in any given *375 case it so operates, depends upon the general theory and the frame and structure of the later will, and the nature and character of the respective provisions contained in the different wills. And in any case, it seems to me, the question whether a former will is revoked by one of later date, whether because' the latter contains an express clause of revocation of all former wills, or because, from its general frame and structure, it was intended to be a new and perfect will, and to replace any that might have been previously made, or because its provisions are incompatible with those of the previous will, is one proper to be submitted.to the judgment of the court of probat. Nor can it be any good or sufficient reason why that court should be deprived of its’ authority to pass upon a subsequent paper, that it inay have already admitted to probat a paper of previous date which, from the lights then before the court, appeared to be the true and only last will and testament of the deceased. If the paper produced be but supplemental to the former will, or if its provisions ai’e only in part inconsistent with those of the former, which contains some plainly not affeeted by the later will, there can be no doubt that the court of probat may and should receive pro-bat of the later will: And so, as it seems to me, if the later will contains an express clause of revocation of former wills, or contains a disposition of the estate incompatible with the provisions of the former, or from its general character may be inferred to be an entire new instrument intended to supersede the former, the court of probat should receive and admit it to probat, leaving it to have such effect as the law would necessarily attach to' it. And I can scarcely think that it is necessary, in such a case, first to file a bill under the statute to set aside the former will; if indeed such a proceeding could be sustained. The *376 function of a bill to set aside a will that has been admitted to probat, is rather to institute an enquiry as to the due execution of the instrument and the competency of the testator to make a will, than to institute before the jury a comparison between that paper and another and competing instrument claimed to be the true last will of the testator, though not yet admitted to probat as such; and thus convert the court of chancery into a court of probat. For if its decree setting aside the former will upon the ground that a later will has been proved before the jury, have not the efíect per se of setting up and establishing the latter, then after the verdict and decree it must be carried into the probat court and proof of its execution given there; and if admitted to probat it must be subject to the right of a party interested to contest it by bill, I presume, under the statute, and thus again to raise the same questions as to its due execution and the competency of the testator, that must have been discussed upon the trial of the validity of the former paper. And on the trial of this issue a testamentary paper of still later date (if one had chanced to be found,) might be introduced and máde the means to overthrow, in turn, the second paper which had served to set aside that first admitted to probat. Great injustice too might follow, if the probat of a given paper, as the last will of a testator, were to have the effect of exhausting the jurisdiction of the court over the subject until that will should be first set aside by bill: For if no such bill be filed within seven years, (under the act of 1819,) that probat becomes forever conclusive not only in favor of that particular paper, but against all others whatsoever : And if a will of later date should be afterwards discovered, it would be utterly unavailing, though in fact the true last will of the testator, because it could not be admitted to probat *377 pending the probat of the former; and that could not be gotten out of the way, because no bill could then lie to set it aside.
The jurisdiction of the courts of probat in Virginia, is a general jurisdiction conferred by statute, to hear and determine all causes, matters, suits and controversies testamentary, arising within their respective jurisdictions : And to examine and take the proof of wills, (as well of realty as of personalty,) and to grant certificates thereof. 1 Rev. Code 1819, ch. 104, § 12, p. 377. The same section prescribes a “method and rule” by which the court in which a will is to be proven, is determined. If the testator have a mansion or known place of residence, the will is to be proved in the Superior court of the county or in the court of the county or corporation in which such mansion house or place of residence shall be. If he have no such place of residence, but lands be devised by the will, it shall be proved in the Superior court of the county or in the court of the county or corporation, wherein the lands lie, or in one of them where there shall be lands in several counties; or if there be no such known place of residence and there be no lands devised, then the will may be proved either in the Superior court of the county or in the court of the county or corporation where the testator died or that wherein his estate or the greater part thereof shall be; or such will might in any case be proved in the General court. The thirteenth section provides that where any will shall be exhibited to be proved, the court having jurisdiction as aforesaid, may proceed immediately to receive the probat thereof and grant a certificate of such probat. The thirty-second section, p. 382, provides that the General court and the several courts respectively, shall have the like jurisdiction to hear and determine the right of administration of the estate of persons dying intestate as was before mentioned (in the twelfth sec *378 tion,) as to the proof of wills, in respect to the intestate’s place of residence or death, or where the estate shall lie. Under these provisions the General court has decided that a grant of administration by the court of a county or corporation not authorized to grant it according to the “method and rule” prescribed in the act, (as where the decedent had neither a residence nor any estate real or personal in the county or corporation in which the administration was granted,) was the act of a court without jurisdiction, and was void; and that the first grant being thus a mere nullity, the court which might properly have granted administration in the first instance might proceed to grant it in the same manner as if there had been no previous grant. Ex parte Barker, 2 Leigh 719. Case of administration of Robert Robinson’s estate, November term 1828, cited in Barker's Case. This doctrine, taken from the English law in relation to grants of administration by a bishop, is supported by the cases of Cutts v. Haskins, 9 Mass. R. 543, and Holyoke v. Haskins, 5 Pick. R. 20; but it cannot now be sustained as sound law. The contrary has been decided in the case of Fishwick's adm'r v. Sewell, 4 Har. & John. 393; and after full consideration in Raborg's adm'r v. Hammond's adm'r, 2 Har. & Gill 42. In Virginia, the grant of administration by a court of probat does not stand on the footing of such a grant by a bishop in England; and I regard the doctrine of Barker's Case as entirely repudiated by this court. In Fisher v. Bassett, 9 Leigh 119, it is decided that a grant of administration by the court of a county or corporation that was not authorized to grant it according' to the provisions of the statute, (the decedent in that case having been a foreigner, and having died abroad, and who had no residence in the corporation by the court of- which the administration was granted, and no estate of any kind there,) is not void, but voidable only: And it was accordingly held in that *379 case that acts of and dealings with such administrator consummated before the letters granted to him were revoked or superseded, could not be called in question. The doctrine of this case is repeated and affirmed by the case of Burnley's representatives v. Duke, &c. 2 Rob. R. 102 ; and is in accordance with the opinion of the Supreme court in the case of Carter's heirs v. Cutting et ux. 8 Cranch R. 251. It grows out of the well settled principle that if a court have general jurisdiction over a given subject matter, a party effected by its action in any particular case cannot be permitted in any collateral proceeding, to show that the court had come to an erroneous conclusion. Brittain v. Kinnaird, 1 Brod. & Bingh. 432, 5 Eng. C. L. R. 137; 3 Stark. Ev. 802.
In delivering his opinion in the case of Fisher v. Bassett, Judge Tucker says, “I do not consider a County or Hustings court in relation to the grant of administration as standing on the same footing with the ordinary in England. The County court is a court of record, and its judgments or sentences cannot be questioned, collaterally, in other actions, provided it has jurisdiction of the cause. [He cites 6 Bac. Ab. Sheriff, M 2, p. 166; 3 Wils. 345.] And this is to be understood as having reference to jurisdiction over the subject matter; for though it may be that the facts do not give jurisdiction over the particular case, yet if the jurisdiction extend over that class of cases, the judgment cannot be questioned; for then the question of jurisdiction enters into and becomes an essential part of the judgment of the court. Thus if a County court were to give judgment of death against a white man, the sheriff would have no lawful authority to execute him ; or if a Court of chancery were to grant probat of a will, it would be ipso facto void, since that court has no jurisdiction in any case of probat. It is held void ipso facto because no enquiry is necessary to ascertain its *380 invalidity. But where the court has jurisdiction of cases cjusdem generis, its judgment in any case is not merely void, because its invalidity cannot appear withou£ an enqUiry into the facts; an enquiry which the court itself must be presumed t.o have made and which will not therefore be permitted to be revived collaterally.” He cites Prigg v. Adams, 2 Salk. R. 674, in illustration of his views. Judge Parker in the same case, after stating that he agreed with Judge Tucker in the opinion that the grant of administration to Scott by the Hustings court, was not a void act but voidable only, proceeds: “ The distinction between the acts of a court having jurisdiction over the subject matter under some circumstances and those of one which in no possible state of things can take jurisdiction over the subject, is a sound and sufficiently intelligible one to guide our judgments in the present case. If under any circumstances the Hustings court could grant administration to Scott, it had jurisdiction of the subject and must judge of those circumstances. If it erred in determining that the facts upon which its power to grant administration in the particular case depended, were proved, it was an error to be corrected by some competent authority; but until so corrected it conferred upon Scott all the powers of a rightful administrator.” Judge Allen in delivering the opinion of the court in the case of Burnley's representatives v. Duke &c. says: “As the court of Orange county had general jurisdiction to grant administration when a proper state of facts existed, whether the court erred or not in determining that the facts were proved upon which the power to grant administration in the particular case depended, is not to be enquired into collaterally. Until such orders or grants were reversed or revoked, they conferred on the grantees all the powers of rightful administrators.”—“ Whether the particular state of facts existed which would have authorized the court to *381 grant administration originally, was a matter to be enquired into and decided by tbe court, and the decision if erroneous would be voidable only and not void.”
These views apply as it seems to me, in all their force to the case now under consideration. The provision in the statute for the probat of wills and that for the grant of administrations in reference to the method and rule by which the particular court that is authorized to act, is to be determined, are, as we have seen, exactly the same. When the will of 1828 was propounded for probat by Michael Schultz in 1845, and the probat was contested by Mrs. Schultz, the case was certainly a matter, suit or controversy testamentary arising within the county of Wood; and of all such the County court of Wood possessed a general jurisdiction' by the express provisions of the act. Assuredly it was not a case in which “ under no possible state of things” could the court take jurisdiction over the subject. If the will of 1818 had been set aside, undoubtedly according to the pretensions of the appellees themselves, it had full authority to admit that of 1828 to probat. So, as we have seen, if the will previously admitted to probat contained provisions not incompatible with those of the will of 1828, so that in the opinion of the court both might stand together, in whole or in part, the two papers constituted but one will, and both might be legally and properly admitted to probat, though propounded at different times. And as the court had a general jurisdiction over cases ejusdem generis under certain circumstances, it must be taken for granted that the court did make enquiry and did judge of those circumstances. So that the question of jurisdiction entered into and became an essential part of the judgment of the court, and if it erred in its judgment in this respect or otherwise, the error was one which must be corrected by some competent authority upon a proper proceeding. The judgment *382 cannot be held void ipso facto because an enquiry is necessary to ascertain its invalidity; and this enquiry • will not be permitted to be made collaterally; and being voidable only and not void, it must remain in full force and effect as evidence or otherwise until reversed or in some way annulled by a proper proceeding.
In the cases of Fisher v. Bassett, and Burnley's representatives v. Duke, &c. the action of the court was the grant of administration. But the effect of a judgment of a court refusing to grant administration when applied for, as a bar, is just the same : Until reversed a resort to any other tribunal or to the same tribunal, for its judgment on the same controversy is inadmissible. Cottom v. Cottom, 4 Rand. 194. And so the rejection of a paper propounded as a will, by the court of probat, must equally preclude a resort to the same or any other tribunal to set up the same paper while that sentence remains in force and unreversed.
■ But it is argued that even if the decision of the County court rejecting the will of 1828 be considered as having been on the merits, and if that court had jurisdiction of the subject, yet as it appears from the reasons of the Circuit court contained in the written opinion filed at the time of the rendition of its judgment affirming that of the County court, that that court was of opinion that the County court had no jurisdiction, its judgment is to be taken and considered with the reasons annexed; and- that the effect of so considering it is to change its character from that of a judgment on the merits to that of one for want of j urisdiction, so that it is no bar to a new proceeding. The Circuit court it is said, had original jurisdiction concurrently with the County court over the subject of probat of wills: It had also an appellate jurisdiction .-both upon the law and upon the facts, and its judgment therefore, and the grounds and reasons for it, are to be looked to to determine the character of *383 the judgment of the County court and its operation and effect as evidence or otherwise.
The judgment of the Circuit court was that there was no error in the judgment of the County court, and that the same should be affirmed with costs; and whatever may have been the reasons which led the Circuit eourt to pronounce it, I am at a loss to perceive how they can either enlarge, or restrain, or in any way modify the operation and effect of the judgment of the County court. It is a direct, general affirmance of the judgment of the County court because there was no error in the same: It left that judgment just as it was when it was pronounced, with the same force and effect which it then had. Let the reasoning of the court be what it might, it could stamp no new character nor impress any new feature upon the judgment which was thus fully and formally affirmed. Nor does this judgment of the Circuit court derive any new import or any special virtue from the fact that that court had concurrent original jurisdiction with the County court over the subject, and appellate jurisdiction as well upon the facts as upon the law of the case. When it pronounced its judgment it was not exercising its original jurisdiction; nor had its appellate supervision over the facts of the case been in any wise invoked. It was called on to review the ease solely upon the questions of law arising upon the record; and it was in the performance of this duty that this its judgment was pronounced. Undoubtedly the Circuit court might have rendered a judgment which would have changed the character of the judgment of the County court, and taken from it its finality and conclusiveness as a judgment upon the merits. To attain'this object it should have reversed the judgment of the County court, and in lieu of it, rendered judgment overruling the application to admit the will of 1828 to probat for want of jurisdiction *384 in the County court to entertain it. But it has not done so; it has affirmed the judgment of the County court, and its original operation and effect must, as it seems to me, remain unchanged.
That the reasons of the Circuit court for its judgment cannot affect the force and operation of the judgment of the County court seems obvious from another consideration. If they could have the effect of so totally changing the character of that judgment as to convert it from a judgment final and conclusive against all the world into one that was conclusive against nobody for want of jurisdiction in the court to act upon the subject, if it chanced that the Circuit court was wrong, how is the error to be corrected ? Mrs. Schultz, the party contesting, would be seriously aggrieved if the Circuit court had improperly deprived her of the benefit of the judgment of the County court as conclusive evidence against the will of 1828; yet from what is she to appeal ? The judgment of the Circuit court affirming that of the County court was right; and she cannot appeal from the reasons of the court; for it is the settled rule that how erroneous soever may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons.
I foi'bear going into the enquiry whether there are not certain provisions in the will of 1818 not . inconsistent with those of the will of 1828, and whether therefore as to them the two wills may not consist and stand together ? In the view I take of the case, this enquiry is unnecessary; but considering the theory of the will of 1828 and its general frame and structure as connected with the circumstances disclosed by the record, much might be said to show that it must have been intended as a perfect and complete testamentary disposition of his estate by the testator, and to super *385 sede and replace any former will or' wills that he might have made.
I am of opinion to reverse the decree of the Court of chancery of the 24th of March 1848 setting aside the will of 1818 ; to set aside the verdict of the jury and the order directing the issue, and to dismiss the bill: And in the probat case, to reverse the judgment of the Circuit court of the 25th of April 1849, affirming the sentence of the County court of the 17th of April 1848, admitting to probat the will of 1828 ; and to reverse the said sentence and reject the said paper.
Daniel and Samuels, Js. concurred in the opinion of Lee, J.
Allen and Moncure, Js. dissented.
Decree and Judgment reversed.